**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TAIJEEM GIBSON,                          :
    Plaintiff                          :
                                       :   **No. 1:22-cv-00618**
    v.                                 :
                                       :   **(Judge Kane)**
SCI COAL TOWNSHIP MEDICAL                :
DEPARTMENT, <u>et</u> <u>al.</u>,         :
    Defendants                         :

## <u>MEMORANDUM</u>

Pending before the Court is Defendants' motion to partially dismiss the complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 10.)  For the reasons set forth below, the Court will grant in part and deny in part the motion and will direct Defendants to answer the complaint.

## I.      BACKGROUND

### A.      Procedural Background

<u>Pro</u> <u>se</u> Plaintiff Taijeem Gibson ("Plaintiff"), who is a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is presently incarcerated at State Correctional Institution Coal Township ("SCI Coal Township") in Coal Township, Pennsylvania.  Plaintiff commenced the above-captioned action on April 28, 2022, by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983") against the following defendants, all of whom appear to have worked at SCI Coal Township during the period of time relevant to his claims: (1) Thomas McGinley, Superintendent of SCI Coal Township; (2) the Medical Department at SCI Coal Township ("Medical Department"); (3) Lynette Rich, a "CHCA" in the Medical Department; (4) Blanche Milo, a supervisor in the Medical Department; and (5) Brian Toms, the Unit Manager of J-Unit at

SCI Coal Township (collectively, "Defendants").  (Doc. No. 1 at 1-3.)  In addition to the complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 2) and his prisoner trust fund account statement (Doc. No. 3).

On May 3, 2022, the Court granted Plaintiff leave to proceed in forma pauperis and directed the Clerk of Court to serve a copy of the complaint on Defendants.  (Doc. No. 6.)  In the interest of administrative judicial economy, the Court requested that Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  (Id.)  On May 31, 2022, Defendants collectively filed their waiver of service.  (Doc. No. 9.)

Then, on June 27, 2022, Defendants filed a motion to partially dismiss the complaint (Doc. No. 10), along with a brief in support thereof (Doc. No. 11).  Following an extension of time (Doc. Nos. 12, 13), Plaintiff filed a brief in opposition on July 27, 2022.  (Doc. No. 14.)  Defendants have not filed a reply brief, and the time period for doing so has passed.  Accordingly, Defendants' motion is ripe for disposition.

**B.      Factual Background**

In the complaint, Plaintiff alleges that, in October of 2021, he filed a "Sick Call Request" to the Medical Department, complaining about a lump in his left testicle.  (Doc. No. 1 ¶ 1.)  Plaintiff alleges that, soon after, he was seen by "medical staff[,]" who scheduled him for an ultrasound.  (Id. ¶ 2.)  Plaintiff alleges that his appointment was scheduled for October 19, 2022, but that he was unable to attend this appointment because he is unvaccinated and, thus, needed an escort to the Medical Department by a corrections officer, which, he alleges, was not provided for him.  (Id. ¶¶ 3; id. 13-17 (explaining that SCI Coal Township had a procedure pursuant to which unvaccinated inmates needed an escort to move outside of their

2

designated housing unit).)  Plaintiff alleges that he was subsequently scheduled for numerous appointments but that he was also unable to attend those appointments because an escort was not provided for him.  (Id. ¶ 4 (citing the specific dates).)

Plaintiff alleges that, on March 8, 2022, he was escorted to the Medical Department. (Id. ¶ 5.)  Plaintiff alleges that, upon his arrival, however, he was informed that the individual who performs the ultrasounds had left and that, as a result, he did not receive an ultrasound. (Id.)  Plaintiff asserts that he thereafter filed "Sick Call Requests[,]" complaining of pain in his testicles.  (Id. ¶ 6.)

Plaintiff alleges that, on March 22, 2022, he was again escorted to the Medical Department, at which time he received an ultrasound.  (Id. ¶ 7.)  Plaintiff alleges that he was subsequently seen by "a PA from the Medical Department[,]" who explained that the lump in his testicle was either a cyst or cancer.  (Id. ¶ 8.)

Plaintiff alleges that, on April 13, 2022, he was seen by Defendant Medical Department and given his results for the ultrasound.  (Id. ¶ 19.)  Ultimately, it was determined that Plaintiff has a cyst, fluid, and calcified stones in his left testicle.  (Id.)  Plaintiff alleges that he asked "the P.A." if a medical procedure could remove the cyst, fluid, and calcified stones.  (Id. ¶ 20.)  Plaintiff alleges that he was told "yes, but the medical department will not authorize such procedure[.]"  (Id. ¶ 21.)  Plaintiff alleges he explained that he was in constant pain, but that he was told to take Tylenol or Motrin.  (Id.; id. ¶ 11 (alleging that he has been dealing with pain for over six (6) months and has not been "given anything to help deal with it"); id. ¶ 21 (alleging that he is "very uncomfortable and in pain[,] cannot sit properly without discomfort or pain, and the slightest movements when [he is] in pain causes [his] testicles to

swell").)

Plaintiff alleges that he raised his complaints through the grievance process at SCI Coal Township and that he "spoke" to Defendant McGinley about his "medical situation[.]"[1]  (Id. ¶ 23.)  Plaintiff alleges that he also "spoke" with Defendant Toms about the "escort situation" at SCI Coal Township and about how, because an escort was not provided for him on several occasions in which he had scheduled medical appointments, this caused him to suffer from "more pain[.]"  (Id. ¶ 24.)  Plaintiff alleges that Defendant Toms stated that it "wasn't his problem" and that when Plaintiff asked "how it isn't his problem[,]" Defendant Toms instructed Plaintiff to go to his cell or the Restricted Housing Unit.  (Id.)  Plaintiff finally alleges that he also explained his "situation" to Defendant Milo but that Defendant Milo told Plaintiff that his medical issue was "frivolous[.]"  (Id. ¶ 25.)  Plaintiff also alleges that "this was supported by [Defendant Rich] through the [DOC] [g]rievance process."  (Id.)

In connection with all of these allegations, Plaintiff asserts that "medical staff and prison officials" intentionally delayed and denied him access to medical treatment, despite knowing that he had medical appointments and that there was a medical procedure that could eliminate his pain and suffering.  (Id. ¶ 27; id. ¶ 29 (alleging that Defendant Medical Department and "[p]rison officials" knew of his need for medical treatment but intentionally refused to provide such treatment and also delayed such treatment based on a non-medical

---

[1]  It is unclear from the complaint whether Plaintiff is attempting to allege that he communicated with Defendant McGinley through the administrative grievance process at SCI Coal Township or whether he spoke with Defendant McGinley on a separate occasion outside of that process. (Doc. No. 1 ¶ 23 (alleging as follows: "I spoke to Superintendent McGinley about my medical situation, and I got responses through the [g]rievance procedure").)

reason").)[2]  As a result, Plaintiff asserts a violation of his constitutional rights under the Eighth

and Fourteenth Amendments to the United States Constitution, as well as a violation of

Sections 13, 25, and 26 of the Pennsylvania Constitution.  (Id. at 12.)  As for relief, Plaintiff

seeks monetary damages and injunctive relief in the form of medical treatment and procedures

to address the cyst, fluid, and calcified stones in his left testicle.  (Id. at 13.)

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

---

[2]  Plaintiff does not expand on this "non-medical reason."  (Doc. No. 1 ¶ 29.)

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## III.     DISCUSSION

Plaintiff has filed his complaint pursuant to the provisions of Section 1983, claiming that

Defendants violated his constitutional rights while he has been incarcerated at SCI Coal

Township.  (Doc. No. 1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

See id.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color

of state law, deprives another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d

141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive

rights but instead provides a remedy for the violation of a federal constitutional or statutory

right."  See id. (citation omitted).

Additionally, in order to plausibly state a claim under Section 1983, Plaintiff must allege

that each defendant was personally involved in the act or acts that he claims violated his

federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A

plaintiff makes sufficient allegations of a defendant's personal involvement by describing the

defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."

Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845

F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal

involvement requires particular 'allegations of personal direction or of actual knowledge and

acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim

against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

### A.     Defendant Medical Department

In the complaint, Plaintiff names the Medical Department at SCI Coal Township as a Defendant.  (Doc. No. 1 at 1, 2.)  Defendants argue in their pending motion to dismiss and supporting brief that Defendant Medical Department has Eleventh Amendment immunity and is not considered a "person" for purposes of claims asserted pursuant to Section 1983.  (Doc. No. 11 at 7, 9.)  For the reasons discussed below, the Court agrees with Defendants.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985); Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty"). It is well-established that the Commonwealth of Pennsylvania has not waived this immunity, see 42 Pa. Const. Stat. Ann. § 8521(b), and that Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States'

Eleventh Amendment immunity).  Further, this Eleventh Amendment immunity extends to all state agencies and departments "having no existence apart from the state."  See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted).  As such, the DOC and its institutions and departments, such as the Medical Department at SCI Coal Township, are entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys.  See 71 P.S. § 61(a).

Additionally, in order for Plaintiff to state a claim under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights.  See Rehberg v. Paulk, 566 U.S. 356, 361 (2012).  However, a state agency, such as the DOC and its institutions and departments, is not considered a "person" for purposes of Section 1983 and, thus, is not amenable to suit under this statute.  See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of that statute); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissing Section 1983 claims against the DOC and one of its institutions because they are entitled to Eleventh Amendment immunity and "are not persons subject to suit under" Section 1983).[3]

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint fails

---

[3]  The Third Circuit Court of Appeals has recognized that its non-precedential opinions ("NPOs") may contain persuasive reasoning or factual similarity and, thus, may be referred to as a paradigm of legal analysis.  See New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (stating that an NPO is "as persuasive as its reasoning"); Drinker by Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an NPO based upon "factual similarity" and "look[ing] to the [NPO] as a paradigm of . . . legal analysis . . . ").  Throughout this Memorandum, the Court has cited to various NPOs because they contain persuasive reasoning and, thus, have been referred to by the Court as a paradigm of legal analysis.

to state a claim upon which relief can be granted against the Medical Department at SCI Coal Township.  Any Section 1983 claims that Plaintiff has asserted against this Defendant will, therefore, be dismissed with prejudice.

**B.     Defendants McGinley, Lynch, and Milo**

In the complaint, Plaintiff asserts a violation of his rights under the Eighth Amendment to the United States Constitution.  (Doc. No. 1 at 12.)  Defendants McGinley, Lynch, and Milo argue in their motion to dismiss and supporting brief that the complaint fails to allege their personal involvement in the conduct that purportedly violated Plaintiff's Eighth Amendment rights.  (Doc. No. 11 at 7-8.)  For the reasons discussed below, the Court is unpersuaded by this argument.

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).  As explained by the United States Supreme Court, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Estelle v. Gamble, 429 U.S. 97, 103 (1976) (stating that the government has an "obligation to provide medical care for those whom it is punishing by incarceration").  To establish an Eighth Amendment claim based upon the denial of medical care,

10

an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  As such, the relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 834-37 (1994); Chavarriaga, 806 F.3d at 226.

"[T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]"  See Farmer, 511 U.S. at 837. The Third Circuit Court of Appeals has found deliberate indifference when a prison official: (1) "knows of a prisoner's need for medical treatment and intentionally refuses to provide it;" (2) "delays necessary medical treatment based on a non-medical reason;" or (3) "prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse, 182 F.3d at 197 (citations omitted).

As an initial matter, the Court observes that Plaintiff asserts very few factual allegations in his complaint against Defendants McGinley, Lynch, and Milo in support of his

Eighth Amendment claims.  (Doc. No. 1 ¶¶ 23-25.)   More specifically, Plaintiff asserts the following allegations: that he "spoke" to Defendant McGinley about his "medical situation" (id. ¶ 23); that  he "spoke" to Defendant Toms about the "escort situation" and how, essentially, it was prolonging his ability to seek medical treatment and causing him "more pain[;]" (id. ¶ 24); that Defendant Toms stated to Plaintiff that it "wasn't his problem" and instructed Plaintiff to go to his cell or the Restricted Housing Unit (id.); that Plaintiff explained his "situation" to Defendant Milo, who told Plaintiff that his medical issue was "frivolous" (id. ¶ 25); and that "this was ultimately supported by [Defendant Rich] through the [DOC] [g]rievance process" (id.).

In their motion to dismiss and supporting brief, Defendants McGinley, Lynch, and Milo argue that Plaintiff's Eighth Amendment claims against them should be dismissed because they were not personally involved in the alleged denial of medical treatment to Plaintiff and, thus, were not deliberately indifferent to his medical needs.  (Doc. No. 11 at 7-9.)  In support, they explain that the extent of their alleged involvement pertains to their responses and/or rejections to the relief sought by Plaintiff through the administrative remedy process at SCI Coal Township.  (Id.)  They argue, however, that such alleged involvement is insufficient to show that they were personally involved in any asserted violations of Plaintiff's constitutional rights.  (Id. (arguing that they cannot be deemed to have been personally involved in such violations where they responded and/or rejected Plaintiff's requests for relief after the alleged denial of the escorts and medical treatment had already occurred).)  In further support, Defendants seemingly cite to documents pertaining to Plaintiff's administrative review process at SCI Coal Township.  (Id. at 3 (citing to "Doc. 2[,]" "Doc. 3[,]" and "Doc. 4").)  Those documents, however, have not been

specifically cited to by Plaintiff in the complaint or attached to the complaint.  See Mayer, 605 F.3d at 230 (explaining that, when ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (citation omitted)).

In his brief in opposition, Plaintiff sharply disputes Defendants McGinley, Lynch, and Milo's arguments concerning his alleged failure to show their personal involvement in this Section 1983 action.  See generally (Doc. No. 14).  More specifically, Plaintiff argues that, through the administrative remedy process at SCI Coal Township, he informed these Defendants that he had a serious medical need, as he was continuing to suffer from swelling and pain in his left testicle.  (Id. at 2-3.)  Plaintiff also argues that, through this administrative process, he specifically requested medical care and treatment for his serious medical need and that these Defendants had the authority to approve such medical care and treatment, but that they denied his requests.  (Id.)

Having reviewed the allegations in Plaintiff's complaint, along with the parties' respective arguments, the Court will deny Defendants McGinley, Lynch, and Milo's motion to dismiss based on a failure to allege their personal involvement in this Section 1983 action.  In order to plausibly state a claim under Section 1983, a plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that the plaintiff claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga,

806 F.3d at 222 (citing <u>Rode</u>, 845 F.2d at 1207); <u>Dooley</u>, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting <u>Rode</u>, 845 F.2d at 1207)).

Generally speaking, the mere filing of a grievance is insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation.  <u>See</u> <u>Rode</u>, 845 F.2d at 1207-08 (finding that the filing of a grievance with the Governor-defendant's office was insufficient to demonstrate that the Governor himself had personal knowledge of the alleged wrongdoing).  In addition, grievances that complain of events that have already occurred and that are in the past are not sufficient to show that defendants who respond to such grievances were personally involved in the asserted constitutional violations.  <u>See</u> <u>Robles v. Casey</u>, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal involvement where "plaintiff's grievance only reported violations that had occurred in the past").

Under certain circumstances, however, a grievance may be sufficient to place a defendant on notice of continued wrongdoing and, thus, may show actual knowledge of and acquiescence in the events that form the basis of the plaintiff's asserted constitutional claims.  <u>See, e.g.</u>, <u>Sutton v. Rasheed</u>, 323 F.3d 236, 249-50 (3d Cir. 2003), <u>as</u> <u>amended</u> (May 29, 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of plaintiffs having access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); <u>Diaz v. Palakovich</u>, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's

grant of summary judgment where the district court had failed to consider grievances pertaining to a pattern of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct).

Thus, on one hand, the Court agrees with Defendants' argument that merely responding to an inmate's grievance that complains of events that have already occurred does not constitute the knowledge and acquiescence that is necessary to show personal involvement.  On the other hand, the Court agrees with Plaintiff's apparent argument that responding to a grievance that complains of events that are ongoing and denying requested relief may constitute the knowledge and acquiescence that is necessary to show personal involvement.

The difficulty here, however, is that Defendants' argument relies on documents that have not been specifically referenced in the complaint or attached to the complaint.  Moreover, while the complaint asserts several allegations that Plaintiff had, essentially, informed Defendants McGinley, Milo, and Rich of his medical complaints, those allegations are sparse and have not been meaningfully developed in the complaint.

That being said, the Court observes that, on a Rule 12(b)(6) motion to dismiss, the burden rests with Defendants to show that Plaintiff's complaint fails to state a claim upon which relief can granted.  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (explaining that, "under Rule 12(b)(6)[,] the defendant has the burden of showing no claim has been stated"); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir.1980) (concluding that the district court had committed reversible error where it had "shifted to the plaintiffs the burden which

properly was the Government's on a motion to dismiss under Fed .R. Civ. P. 12(b)(6) and deprived the plaintiffs of the procedural safeguards to which they were entitled").  Thus, under these circumstances, the Court finds that Defendants McGinley, Rich, and Milo have not shown that the complaint fails to state a claim upon which relief can be granted.  As a result, the Court will deny their motion to dismiss to the extent that they seek dismissal of Plaintiff's Eighth Amendment claims.

  **C.**  **Plaintiff's Fourteenth Amendment Claims**

  In the complaint, Plaintiff asserts a violation of his rights under the Fourteenth Amendment to the United States Constitution.  (Doc. No. 1 at 12.)  In response, Defendants argue in their motion to dismiss and supporting brief that the more specific-provision-rule requires Plaintiff's Fourteenth Amendment claim to be analyzed under the Eighth Amendment.  (Doc. No. 11 at 7-8.)  For the reasons discussed below, the Court agrees with Defendants.

  The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. XIV, § 1.  "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components."  Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted).  The procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property[,]" see id. at 662, and the substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]"  See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000).

  Here, the Court is unable to discern any allegations in the complaint which would

implicate the procedural component of the Due Process Clause.  At most, the allegations in the complaint implicate the substantive component of the Due Process Clause.  As stated above, however, Defendants argue that Plaintiff's substantive due process claim should be dismissed pursuant to the more-specific-provision rule.  (Doc. No. 11 at 9-10.)  As also stated above, the Court agrees.

The United States Supreme Court "'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'"  See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 447 (3d Cir. 2020) (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992)).  Thus, "[u]nder the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"  See id. (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

Applying these principles here, the Court finds that, to the extent the complaint can be construed as asserting a Fourteenth Amendment substantive due process claim, such a claim challenges the same conduct that Plaintiff's Eighth Amendment claim challenges—i.e., that Defendants were deliberately indifferent to his serious medical needs at SCI Coal Township, beginning in October of 2021 and continuing up until at least April of 2022, when he filed the complaint.  Thus, under these circumstances, the more-specific-provision rule requires Plaintiff's substantive due process claim to be analyzed under the more specific provision of the Eighth Amendment, rather than the rubric of substantive due process.

Consequently, the Court will grant Defendants' motion to dismiss Plaintiff's Fourteenth

17

Amendment substantive due process claim.  See id. at 447-48 (holding that a state prisoner's substantive due process claim challenged the same conduct as his Eighth Amendment claim and, thus, was barred under the more-specific-provision rule where there were no distinct facts that applied only to his substantive due process claim); Johnson v. Pennsylvania Dep't of Corr., 846 F. App'x 123, 128 n.6 (3d Cir. 2021) (unpublished) (citing Porter and noting that, because the plaintiff's substantive due process claim challenged the same conduct as his Eighth Amendment claim, "the Eighth Amendment provide[d] the appropriate vehicle for considering [his] claims").

### D.      Plaintiff's Claims Under the Pennsylvania Constitution

In the complaint, Plaintiff also asserts violations of Article I, Sections 13, 25, and 26 of the Pennsylvania Constitution.  (Doc. No. 1 at 12.)  Defendants contend, however, that Plaintiff's claims under these various Sections of the Pennsylvania Constitution should be dismissed for failure to state a claim upon which relief can be granted.  (Doc. No. 11 at 10-12.)  In support of this contention, Defendants assert several arguments.  The Court addresses these arguments in turn.

### 1.      Monetary Relief Under the Pennsylvania Constitution

As an initial matter, Defendants argue, and the Court agrees, that Pennsylvania has not recognized a private right of action for monetary damages based upon violations of its Constitution.  See, e.g., Hoffman v. Makhoul, No. 1674 C.D. 2016, 2017 WL 1788348, at *3 (Pa. Commw. May 5, 2017) (finding that the plaintiff had failed to plead a valid cause of action for a violation of Article I, Section 13 of the Pennsylvania Constitution because the courts of the Commonwealth "have not recognized any private right of action for money damages for violation of the Pennsylvania Constitution" (collecting cases)); Mount Airy #1, LLC v.

Pennsylvania Dep't of Revenue & Eileen McNulty, 154 A.3d 268, 280 n.11 (Pa. 2016)

(recognizing that neither Pennsylvania statutory authority nor appellate case law has permitted an

award of monetary damages for violations of the Pennsylvania Constitution (citation omitted));

Balletta v. Spadoni, 47 A.3d 183, 192 (Pa. Commw. 2012) (explaining that, "'[t]o date, neither

Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary

damages for a violation of the Pennsylvania Constitution'" (quoting Jones v. City of

Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. 2006))).

The United States Court of Appeals for the Third Circuit has observed the same, albeit in

non-precedential opinions.  See, e.g., Schutzeus v. Pennsylvania Bd. of Prob. & Parole, No. 20-

2031, 2022 WL 58541, at *2 n.3 (3d Cir. Jan. 6, 2022) (unpublished) (stating that "Pennsylvania

does not recognize a private right of action for damages for violations of its constitution (citation

omitted); Moss v. Pennsylvania, 838 F. App'x 702, 708 (3d Cir. 2020) (unpublished) (stating

that "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging

a violation of the Pennsylvania Constitution" (citation omitted)); Ibn-Sadiika v. Cnty. of

Allegheny Dep't of Ct. Recs., 647 F. App'x 60, 62 (3d Cir. 2016) (unpublished) (finding that the

plaintiff's claims for damages based upon alleged violations of the Pennsylvania Constitution

failed as a matter of law because Pennsylvania has not authorized an award of monetary damages

for such violations of its Constitution); Pocono Mountain Charter Sch. v. Pocono Mountain Sch.

Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (unpublished) (stating that "[n]o Pennsylvania

statute establishes, and no Pennsylvania court has recognized, a private cause of action for

damages under the Pennsylvania Constitution").

Finally, federal district courts sitting in Pennsylvania have also observed that the

Pennsylvania Constitution does not provide a private right of action for monetary damages.  See, e.g., Walker v. Wetzel, No. 20-cv-01608, 2022 WL 433161, at *9 (M.D. Pa. Feb. 11, 2022) (stating that Pennsylvania has not recognized a private cause of action for damages under the Pennsylvania Constitution and, thus, the plaintiff's claim for damages based upon the defendants' alleged violations of the cruel and unusual punishment clause under Article I, § 13 of the Pennsylvania Constitution was subject to dismissal); M.T. by & Through Eison v. Peterman, No. 17-cv-01619, 2019 WL 461083, at *7 (W.D. Pa. Feb. 6, 2019) (concluding that the plaintiff's state constitutional claims for damages failed to state a claim because "Pennsylvania law does not recognize a private cause of action for damages under the Pennsylvania Constitution . . ." (citations omitted)); Kaucher v. Cnty. of Bucks, No. 03-cv-01212, 2005 WL 283628, at *11 (E.D. Pa. Feb. 7, 2005), aff'd, 455 F.3d 418 (3d Cir. 2006) (explaining that "Pennsylvania has no statute similar to [Section] 1983, which provides the cause of action for damages due to a federal constitutional violation").

Thus, in accordance with this case law, the Court finds that, to the extent Plaintiff seeks monetary damages under the Pennsylvania Constitution, his request for relief is subject to dismissal.  Accordingly, the Court will grant Defendants' motion to dismiss on this basis, and the Court will dismiss Plaintiff's claims for monetary damages based upon violations of the Pennsylvania Constitution.

### 2.      Plaintiff's Claims Under Article I, Section 13 of the Pennsylvania Constitution

Although Plaintiff is, as discussed above, precluded from recovering monetary damages for violations of the Pennsylvania Constitution, he is not precluded from recovering other remedies.  See, e.g., Jones, 890 A.2d at 1216 (sating that "[o]ther remedies, such as declaratory

or prospective injunctive relief" are available for a violation of Article I of the Pennsylvania

Constitution); Hughes v. Rush Twp. Police Dep't, No. 1804 C.D. 2014, 2015 WL 5453321, at *2

(Pa. Commw. July 6, 2015) (stating that "[a] plaintiff can pursue declaratory or prospective

injunctive relief under the Pennsylvania Constitution" (footnote and citation omitted)).

Here, Defendants recognize that injunctive relief may be available for claims brought

under the Pennsylvania Constitution, but nevertheless argue that "none of the remaining

Defendants could grant the injunctive relief sought, which is authorization of appropriate

medical treatment."  (Doc. No. 11 at 11 (footnote omitted).)  Defendants appear to base this

argument on the fact that they have sought the dismissal of Defendants Medical Department,

McGinley, Rich, and Milo from the complaint.  (Id. at 11 n.1 (explaining that, if the Court were

to grant their partial motion to dismiss, Defendant Toms would be the only remaining Defendant

in Plaintiff's complaint).)  Based upon this argument, Defendants specifically seek the dismissal

of Plaintiff's claims under Article I, Section 13 of the Pennsylvania Constitution (id.), which

provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel

punishments inflicted."  See Pa. Const. Art. 1, § 13.[4]

As discussed above, the Court will deny Defendants' motion to dismiss Plaintiff's Eighth

Amendment claims against Defendants McGinley, Rich, and Milo.  As a result, Defendants'

---

[4]  "The Pennsylvania prohibition against cruel and unusual punishment is coextensive with the
Eighth and Fourteenth Amendment of the United States Constitution." Commonwealth v.
Bonner, 135 A.3d 592, 597 n.18 (Pa. Super. 2016) (quoting Commonwealth v. Yasipour, 957
A.2d 734, 743 (Pa. Super. 2008), appeal denied, 980 A.2d 111 (2009)) (citation omitted).  The
Court notes that Defendants do not assert any arguments concerning the sufficiency of the factual
allegations underpinning Plaintiff's claims brought under Article I, Section 13 of the
Pennsylvania Constitution.  Rather, Defendants seem to argue, as discussed above, that
Defendant Toms cannot grant the injunctive relief sought with respect to such claims.  (Doc. No.
11 at 11.)

argument that "none of the remaining Defendants could grant the injunctive relief sought" (Doc. No. 11 at 11) is unpersuasive.  Indeed, the Court observes that, in seeking such injunctive relief, Plaintiff need only name an official or officials "who can appropriately respond to injunctive relief."  See, e.g., Parkell, 833 F.3d at 332 (citation and internal quotation marks omitted).  And, here, it appears that Plaintiff has named at least two (2) Defendants who could appropriately respond to his request for injunctive relief.  (Doc. No. 1 at 1-3 (naming Defendant McGinley, the Superintendent of SCI Coal Township, and Defendant Rich, the "CHCA" of the Medical Department at SCI Coal Township).)

### 3. Plaintiff's Claims Under Article I, Sections 25 and 26 of the Pennsylvania Constitution

Finally, Defendants argue that Plaintiff has "failed to put forth factual content which gives rise to valid claims under Article I, Sections 25 and 26" of the Pennsylvania Constitution. (Doc. No. 11 at 11.)  Section 25, titled "Reservations of powers in people[,]" provides as follows: "[t]o guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate."  See Pa. Const. art. I, § 25.  And, Section 26, titled "No discrimination by Commonwealth and its political subdivisions[,]" provides as follows: "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."  See Pa. Const. art. I, § 26.

Defendants argue, and the Court agrees, that Plaintiff has failed to show how the factual allegations in the complaint give rise to claims under Article I, Sections 25 and 26 of the Pennsylvania Constitution.  (Doc. No. 11 at 11.)  In the complaint, Plaintiff alleges violations of

inadequate medical care while incarcerated at SCI Coal Township.  (Doc. No. 1.)  Sections 25 and 26, however, do not afford Plaintiff an independent basis of relief premised upon such allegations.  Moreover, it is not enough to simply claim that Defendants have violated Sections 25 and 26 of the Pennsylvania Constitution.  Plaintiff must assert specific factual allegations in support thereof.  See Fowler, 578 F.3d at 211 (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief[,]" it "has to show such an entitlement with its facts" (citation and internal quotation marks omitted)); Iqbal, 556 U.S. at 679 (stating that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2))).  Thus, the Court finds that the complaint fails to state a claim upon which relief can be granted under Article I, Sections 25 and 26 of the Pennsylvania Constitution.  As a result, these claims will be dismissed.[5]

**D.     Leave to Amend**

The only remaining issue is, therefore, whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.

---

[5]  The Court notes that Article I, Sections 25 and 26 do not appear to be the proper constitutional provisions for Plaintiff's claims of inadequate medical care.  By way of example, Plaintiff has not asserted, in the context of Section 25, that a legislative enactment, an executive regulation, or a judicial decision is infringing on any of his rights set forth in Article I of the Pennsylvania Constitution.  See, e.g., Gondelman v. Com., 554 A.2d 896, 904 (Pa. 1989) (explaining that the appellants' reliance upon Article I, Section 25 of the Pennsylvania Constitution "would be convincing if its focus was directed at a legislative enactment, an executive regulation or a judicial decision" that was transgressing on rights contained in Article I).  By way of further example, Plaintiff has not asserted, in the context of Section 26, any allegations, whatsoever, regarding equal protection of the laws or a denial thereof.  See, e.g., Com. v. Parker White Metal Co., 515 A.2d 1358, 1362-63 (Pa. 1986) (recognizing that Article I, Section 26 of the Pennsylvania Constitution guarantees equal protection of the laws).

See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of

Civil Procedure allow for amendments to be granted liberally in light of the "principle that the

purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371

U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

　　　　However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of the amendment[.]"  See id.  The Court may also deny leave to amend

where the proposed amendment would be futile—that is, where the pleading, "as amended,

would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec.

Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

　　　　In accordance with this standard, the Court finds that granting Plaintiff leave to amend

his claims against Defendant Medical Department would be futile, as this Defendant is immune

from suit and is not a "person" for purposes of Section 1983.  In addition, the Court finds that

granting Plaintiff leave to amend his Fourteenth Amendment claim would also be futile, as the

more-specific-provision rule requires Plaintiff's substantive due process claim to be analyzed

under the Eighth Amendment.  Finally, the Court finds that granting Plaintiff leave to amend his

claims brought under Article I, Sections 25 and 26 of the Pennsylvania Constitution would also

be futile, as these Sections are not the appropriate provisions for the allegations set forth in the

complaint.

　　　　However, as discussed above, Plaintiff will be permitted to proceed on his Eighth

Amendment claims of inadequate medical care against Defendants McGinley, Rich, Milo, and

Toms.  In addition, Plaintiff will be permitted to proceed on his claims for injunctive relief under Article I, Section 13 of the Pennsylvania Constitution.

## IV.    CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to partially dismiss the complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants will be directed to file an answer to the complaint. An appropriate Order follows.